IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES McBRIDE, | No. 2:12-cv-0948-CMK |
| Plaintiff, | |
| vs. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 22). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

## I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on August 21, 2007, alleging an onset of disability on August 1, 2006, due to disabilities including arthritis, chronic obstructive pulmonary disease (COPD), and emphysema (Certified administrative record ("CAR") 80, 84, 140-47, 155-66).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on March 23, 2010, before Administrative Law Judge ("ALJ") Peter F. Belli.  In a July 2, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation


1. The claimant has not engaged in substantial gainful activity since August 21, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) and emphysema (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 414.967(b) except change position after one hour of walking/standing and sit for 10-15 minutes, and avoid concentrated exposure to pulmonary irritants or humidity.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on October 16, 1955 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 21, 2007, the date the application was filed (20 CFR 416.920(g)).

(CAR 10-18). After the Appeals Council declined review on February 10, 2012, this appeal followed.

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred in three ways: (1) the ALJ failed to credit plaintiff's testimony and third party statements; (2) the ALJ failed to credit the testimony of the vocational expert (VE); and (3) the ALJ filed to properly analyze plaintiff age situation.

### A.  CREDIBILITY

Plaintiff first argues that the ALJ failed to properly credit his testimony and his third party statements as to the subjective limitations. He argues the reasons the ALJ gave for

rejecting his testimony as to his limitations were not legitimate, and his testimony should have been credited.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find

1  a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

2  2005).

3          Here, the ALJ found plaintiff's

> medically determinable impairment could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with
> the . . . . residual functional capacity assessment.

(CAR 13-14)

> The undersigned now considers the claimant's subjective
> complaints as required by the Regulations and Social Security
> Ruling 96-7p, noting he alleges breathing affecting his eyesight,
> arthritis, COPD, asthma, shortness of breath, emphysema, fatigue,
> and memory loss.  He testified he has high blood pressure, lung
> problems and right chest pain.  His daily activities include watching
> TV, doing house chores, visiting with friends, walking four blocks
> to get the mail, and caring for his personal needs.  He alleged his
> inhalers cause shakiness and that functionally he can walk 10
> minutes then has to rest 10 minutes, and that he needs to use an
> inhaler when walking up stairs.  He further alleged he lies down in
> the afternoon as he feels exhausted.
>
> The record indicates his daily activities include checking the mail,
> looking for work, doing chores, grocery shopping, caring for his
> personal needs, preparing meals, doing his laundry, washing dishes,
> cleaning the floors, paying bills, watching TV, reading, and talking
> on the telephone (Exhibits 4E &8E-9E).
>
> First, the undersigned finds that his high blood pressure, arthritis,
> fatigue, and vision complaints are not credible as treating VA
> records do not document that his blood pressure was uncontrolled or
> poorly controlled on a consistent basis, appeared fatigued during
> examinations, was diagnostic [sic] with arthritis and testing of the
> knees revealed on [sic] minimal osteoarthritic changes, and very
> limited evidence of treatment for his alleged vision problems due to
> his pulmonary complaints (Exhibits 1F & 10F-16F).  Despite these
> complaints, the claimant is able to perform multiple normal daily
> activities as set forth in the record (Exhibits 4E, 8E-9E & 3F).  The
> SA determinations did not identify any limitations related to these
> complaints (Exhibits 4F-6F & 8F-9F), and he indicated in his
> application he did not need help with personal care, hygiene or
> upkeep of a home (Exhibit 1D, p 2).  Because these complaints are
> not credible, they do not erode his residual functional capacity.
>
> Next, his pulmonary complaints cannot be found totally credible as
> the SA determined he could perform medium work, avoiding

7

concentrated exposure to pulmonary irritants (Exhibits 4F-6F & 8F-9F) and Dr. Dhirman's internal medicine indicated the claimant could perform medium work, avoiding pulmonary irritants (Exhibit 3F).

Veterans Administration records also do not fully support his complaints as pulmonary function testing did not consistently establish that he had severe or marked abnormalities and following his lung surgery in September 2009 he was not considered a skilled nursing facility candidate due to his fairly high functional level. Furthermore, diagnostic testing postoperatively indicated chest x-rays September 17, 2009 showed emphysema in both lungs and opacity in the right upper lobe was stable and no definite pneumothorax was seen. Chest x-rays October 1, 2009 showed continued decrease in the size of band like scar or atelectassis in the right upper lobe and no new pulmonary findings seen. A PFT February 17, 2001 resulted in an interpretation of flow-volume curve was curvilinear and suggested an obstructive ventilatory defect and no evidence of a restrictive ventilatory defect. The chart notes contained no disability opinions or indication the claimant was temporarily disabled and also did not identify any functional limitations. What was evident in the VA chart notes was the fact the claimant was a long term smoker and cessation of his smoking would have likely improved his pulmonary problems; yet, there was no indication the claimant availed himself of smoking cessation programs offered by the VA. Additionally, there was no indication of adverse side effects to his medications, and he was hospitalized only once for his pulmonary problems (Exhibits 1F & 10F-16F).

Lastly, his pulmonary complaints are not fully credible as Dr. Selinger's record indicate he treated the claimant for moderate COPD with bullous emphysema and did not indicate he considered the claimant disabled (Exhibits 2F & 7F). The claimant did not sound to be out of breath during the interview with Social Security when he filed his application (Exhibit 1E, p 3), and he is able to perform multiple normal daily activities despite his pulmonary complaints (Exhibits 4E, 8E-9E & 3F).

Given the preceding factors, his pulmonary complaints are found partially credible.

(CAR 15-16).

Plaintiff contends the reasons given for finding his subjective complaints only partially credible are not sufficient nor are they supported by the record. Plaintiff argues that although Dr. Dhirman found plaintiff capable of performing medium work, he did so only with the limitation that plaintiff will need frequent breaks. This he argues is consistent with his testimony regarding his limitations on walking and physical exertion. He also argues that

8

treatment records show a progressive worsening of his condition. While he initially felt better after his surgery, shortly thereafter his condition continued to deteriorate. As to his smoking, while he does not go so far as to argue that the ALJ was incorrect in finding plaintiff had not availed himself of smoking cessation programs, he states he had made significant strides in reducing his smoking.

Defendant argues the ALJ provided several reasons for not fully crediting plaintiff's testimony, and those reasons were supported by substantial evidence in the record. The ALJ noted plaintiff's daily activities, which was a proper factor to consider. Further, the ALJ accurately found plaintiff failed to quit smoking as he was advised to do given his medical condition. The defendant also notes inconsistency in plaintiff's reports as to how long he is able to walk, which weighs against his credibility. Finally, the ALJ considered the objective medical evidence, and three different physicians opined the plaintiff could perform a range of medium work, and the objective medical evidence did not support plaintiff's claims.

Contrary to plaintiff's arguments, the undersigned finds the reasons the ALJ gave for finding plaintiff's subjective complaints not fully credible were clear and convincing and supported by the record. The ALJ did not simply discredit plaintiff's subjective complaints based on the lack of objective medical evidence. Rather, the ALJ made specific findings as to the severity of plaintiff's symptoms. The ALJ did find the objective medical evidence did not fully support the severity of plaintiff's symptoms, including the pulmonary function testing and the stability of his condition after his surgery. In addition, however, the ALJ found it significant that none of the treatment notes from plaintiff's treating medical providers indicate a finding that plaintiff's condition is debilitating. In fact, the examining physicians all found plaintiff capable of medium work. Plaintiff is correct that Dr. Dhirman stated plaintiff would require frequent breaks, but the ALJ included that limitation in his hypothetical to the vocational expert. In addition, the ALJ found that plaintiff continued to smoke even after being advised of the need to quit, and failed to avail himself of the smoking cessation programs offered to him. Plaintiff argues that

while he may not have quit, he significantly decreased the amount he smoked, and made an earnest effort at so doing.  The undersigned finds this statement not supported by the evidence.  In fact, as the defense points out, plaintiff testified that he stopped smoking after his surgery in September 2009.  However, as of February 2010, he was still smoking four to five cigarettes a day.  [CAR 814].  The inconsistency of these statements, and plaintiff's failure to follow medical advice is strong support for the ALJ's credibility determinations.

Therefore, the undersigned finds the reasons the ALJ provided for finding plaintiff's subjective complaints not fully credible were clear and convincing, and supported by the evidence.

Next, plaintiff argues that the ALJ failed to properly assess the lay witnesses statements.

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.  ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ summarized the third party statements which:

> allege the claimant's health had deteriorated, and he was no longer able to work on projects.  After walking two blocks, he has to slow down to catch his breath, and has been unable to trim the hedges

> and cut the grass at church as he did in the past. His ability to perform the most mundane household chores has been compromised to the point he cannot even walk up a flight of stairs or mop the floor without stopping to catch his breath. He is no longer able to do simple yard [work] or shop and that he sleeps more than anything else. His mood is often blue and does not leave his house for days on end. He was unable to do almost anything expect [sic] sit or lay down and has problems completing tasks because he has to take so many breathing breaks. He cannot bend without becoming lightheaded and is no longer able to lift even the smallest box because his breathing is compromised. The claimant was unable to obtain or maintain any form of gainful employment and was unable to do any of his former jobs (Exhibits 13E, 15E & 17E).

[CAR 15]

> The ALJ then give these statements minimal weight
>
> as they were not supported by the claimant's daily activities as identified in the record, the medical opinions contained in the internal medicine CE or by the SA determinations. Lastly, VA treating records do not support the allegations made in those statements as their records did not contain evidence that the claimant appeared to be sleep deprived, fatigued or was considered to be disabled or unable to perform daily activities.

[CAR 17].

Plaintiff argues that the ALJ failed to provide proper reasons for rejecting the third party witness testimony, that contrary to the ALJ's determination, the testimony was consistent with plaintiff's testimony and supported by VA treatment notes. The defendant contends the ALJ properly considered the testimony and provided sufficient reasons for rejecting the testimony.

Contrary to plaintiff's argument, however, the court finds the reasons provided sufficient. Plaintiff essentially simply disagrees with the reasons the ALJ provided. This is not a sufficient bases to find reversible error. The ALJ may not have identified each witness by name, but he summarized the lay testimony and, as quoted above, provided several reasons why he was rejecting the testimony. There is no requirement that the ALJ identify each lay witness and provide specific reasons as why each named witness's testimony is rejected. It is sufficient for the ALJ to summarize the testimony and provide specific, germane reasons why the testimony is rejected. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

### B. VOCATIONAL EXPERT

Plaintiff next claims the ALJ erred in not crediting the vocational expert's (VE) testimony based on the proper hypothetical and failed to ask whether the testimony was consistent with the Dictionary of Occupational Titles (DOT). Plaintiff's argument is based on the allegation that the ALJ erred in discrediting plaintiff's testimony and all of his alleged limitations should have been included in the hypothetical posed to the VE.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

As discussed above, the ALJ did not err in his credibility determination. As such, there was no requirement for the ALJ to include additional limitations he did not find credible in the RFC and the hypothetical based thereon. The hypothetical posed to the VE, and relied on by the ALJ, included all the limitations the ALJ found credible and included in the RFC. The undersigned, therefore, finds no error in the ALJ's hypothetical, nor in the VE's testimony based thereon.

In addition, plaintiff argues the ALJ erred in failing to inquire as to whether the VE's testimony is consistent with the DOT. Plaintiff argues that the VE's testimony as to the three jobs she testified would be possible for a person with plaintiff's limitations to perform, conflicts with the DOT. The VE testified that the three jobs were classified as "light" exertional level. However, when questioned by plaintiff's attorney as to his need to sit, the VE testified that

these positions were primarily performed sitting.  Plaintiff contends the jobs should therefore be considered sedentary, not light, and that the VE's testimony therefore conflicts with the DOT.

Defendant argues the plaintiff is attempting to create a conflict where none exists.  Defendant acknowledges the ALJ failed to ask the VE whether his testimony was consistent with the DOT.  However, defendant contends that such an error is harmless because there is no actual conflict.

Once a claimant establishes he can no longer perform his past relevant work, the burden shifts to the Commissioner to establish the existence of alternative jobs available to the claimant, given the claimant's age, education, and work experience.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citing Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986)).  This burden can be satisfied by either applying the Medical-Vocational Guidelines ("Grids"), if appropriate, or relying on the testimony of a VE.  See id.  The testimony of a VE should generally be consistent with the DOT, although neither "trumps" the other if there is a conflict.  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is an inconsistency between the VE's testimony and the job descriptions in the DOT, the ALJ must resolve the conflict.  See id. (citing SSR 00-4p).

Pursuant to Social Security Ruling (SSR) 00-4p, the Ninth Circuit has found the ALJ is explicitly required to determine if a VE's testimony deviates from the DOT, and if so there must be sufficient support for that deviation.  See id.  Specifically, the Court found:

> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles*]."  SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Id. at 1152-53 (emphasis in original).  Only after making such a determination, and obtaining an explanation if necessary, can the ALJ rely on the testimony of a VE.

Here, the ALJ posed a hypothetical to the VE which included plaintiff's limitations, including the need to sit for 5 or 10 minutes after an hour of standing and/or walking. In response, the VE identified three positions which could be performed with those limitations identified. The ALJ never asked the VE whether his testimony was consistent with the skills as set forth in the DOT for the positions identified.

In reviewing the DOT positions identified by the VE, the court finds no apparent conflict. Plaintiff argues the conflict is with the VE's testimony that the positions are generally performed sitting down, which would render them sedentary not light. However, the undersigned does not see a conflict. The ALJ found plaintiff capable of light work, except the need to sit after standing and/or walking for an hour. There were no limitations identified in plaintiff's ability to sit for longer periods of time. The positions identified by the ALJ are classified as light work.[3] The DOT does not address the issue of a sit/stand option for these positions, but there does not appear to be any conflict with plaintiff's need to sit after an hour of standing, as the VE testified. Therefore, the undersigned sees no apparent conflict between the VE's testimony and the DOT.

Defendant argues any error was harmless. The Ninth Circuit has indicated such an error can be harmless. The Court identified two situations where such an error can be harmless: if there is no conflict or if the VE "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154 n.19 (citing Johnson v. Shalala, 60 F.3d 1428

---

[3] Each of the positions defined the strength requirement as follows: STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
See e.g., DICOT 239.567-010, 1991 WL 672232 (office helper).

(9th Cir. 1995). Here, there does not appear to be a clear conflict. Plaintiff's alleged conflict regarding whether the position is sedentary or light is tenuous. Therefore, the undersigned finds any error by the ALJ in failing to affirmatively inquire as to whether the VE's testimony conflicted with the DOT was harmless.

### C. PLAINTIFF'S AGE

Plaintiff's final contention is that the ALJ erred in failing to classify him as a person of advanced age. Plaintiff argues that he was three and a half months shy of turning 55 as of the date of the decision, and the ALJ should have used the advanced age category in determining his disability.

As plaintiff sets forth, the Ninth Circuit recently addressed the issue of the ALJ's failure to set forth an explanation in the decision regarding the choice of age category in a borderline situation. See Lockwood v. Comm'r, 616 F.3d 1068 (9th Cir. 2010). In Lockwood, the Ninth Circuit held that the ALJ is required to consider whether to use the older age category in a borderline situation, and not apply the age categories mechanically, but that the ALJ had the discretion to make that determination and was not required to explain that determination in the decision. See id. at 1072. So long as the ALJ considered whether to use the older age category, the ALJ met that requirement and was not required to make express findings. The citation to the claimant's date of birth, citation to the appropriate regulation, and evaluation of the overall impact of all the facts of the case supports the ALJ's discretionary determination as to whether or not to use the older age category.

Here, the ALJ cited plaintiff's age as of the date of application, but he identified plaintiff's date of birth and cited to the appropriate regulation indicating awareness of the requirement to consider plaintiff's borderline age. In addition, the ALJ did not simply apply the grids in this case. A VE was called to testify at the hearing, wherein the ALJ set forth a hypothetical which included plaintiff's current age and limitations.

Plaintiff attempts to distinguish this case from Lockwood by arguing that plaintiff

had additional vocational adversities which made using the younger age category inappropriate. The additional adversities plaintiff sets forth include his need for breaks when standing and walking, his need to lie down in the afternoon, and to avoid exposure to contaminates.  However, as the defendant argues, the ALJ discredited plaintiff's testimony which included his need for a nap and included plaintiff's need for sitting breaks and avoidance of exposure to contaminates in the hypothetical presented to the VE.  Therefore, those additional adversities plaintiff argues were considered.  The undersigned finds the ALJ did not err by failing to explain his decision to treat plaintiff as a person closely approaching advanced age, instead of a person of advanced age.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 18) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 22) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 24, 2014

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE